# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed:  September 21, 2020

| | | |
|---|---|---|
| * * * * * * * * * * * * * | * | UNPUBLISHED |
| DOUG AHLUM *and* KARI AHLUM | * | |
| *Parents and Next of Kin to T.A.,* | * | No. 12-763V |
| | * | Special Master Horner |
| Petitioners, | * | |
| | * | |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | | |

Andrew D. Downing, Van Cott & Talamante, PLLC, Phoenix, AZ, for Petitioners.
Debra A. Filteau Begley, United States Department of Justice, Washington, D.C., for Respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On November 9, 2012, Doug and Kari Ahlum filed a petition for compensation pursuant to the National Vaccine Injury Compensation Program on behalf of their minor child, T.A.[2] 42 U.S.C. §§ 300aa-10 to 34 (2012). The petition alleged that the measles mumps rubella vaccine caused a Table encephalopathic event, resulting in permanent injuries including the amputation of both of T.A.'s legs. (ECF No. 1).  On January 24, 2020, the parties filed a proffer, which I adopted as my decision awarding compensation on January 27, 2020.  (ECF No. 149).

On April 23, 2020, petitioners filed an application for attorneys' fees and costs. (ECF No. 155) ("Fees App.").  Petitioners request total attorneys' fees and costs in the amount

---

[1] I intend to post this Ruling on the United States Court of Federal Claims' website. **This means the Ruling will be available to anyone with access to the Internet**.  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.  Because this unpublished ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

$146,303.09 (representing $99,728.50 in fees and $46,574.59 in costs). Fees App. at 1.[3] Pursuant to General Order No. 9, petitioners state that they did not personally incur any expenses associated with this claim. Respondent responded to the motion on May 7, 2020, indicating that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case" and requests that I exercise my discretion and determine a reasonable award for attorneys' fees and costs. Resp. at 2–3 (ECF No. 156). Petitioners did not file a reply thereafter.

This matter is now ripe for consideration.

I. **Reasonable Attorneys' Fees and Costs**

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008). This is a two-step process. *Id.* at 1347-48. First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Such applications, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'" *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 894-95. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n.11. Petitioners bear the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). When determining the relevant fee reduction, special masters need not engage in a line-by-line analysis of petitioners' fee application. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Instead, they may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Dep't of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1991), *rev'd on other grounds and aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . Vaccine program

---

[3] Petitioners were previously awarded interim attorneys' fees on July 31, 2014, and on May 26, 2016.

2

special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521.

### a. Hourly Rates

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Court has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015–2016, 2017, 2018, 2019, and 2020 can be accessed online.[4]

Petitioners request compensation for their counsel at the following rates: for Mr. Andrew Downing, $350.00 per hour for work performed in 2016, $375.00 per hour for work performed in 2017, and $385.00 per hour for all work performed thereafter, and for Ms. Courtney Van Cott, $195.00 per hour for work performed in 2016 and 2017 and $205.00 per hour for work performed in 2018 and 2019. These rates are consistent with what Mr. Downing and Ms. Van Cott have previously been awarded for their Vaccine Program work, and I find them to be reasonable for the instant case.

### b. Hours Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521. While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

Upon review, I find that the overall hours spent on this matter appear to be largely reasonable. The entries are reasonable and accurately describe the work being performed and the length of time it took to perform each task. However, a small amount must be reduced for overbilling by firm paralegals. In the instant case, the overbilling incudes time expended on clerical/administrative tasks such as receiving and paying invoices and a general excessive amount of time billed to complete various tasks such as preparing and filing documents and reviewing filings from the Court and Respondent. These issues have all been previously noted concerning the work of Van Cott & Talamante paralegals. *See, e.g., Sheridan v. Sec'y of Health & Human Servs.*, No. 17-669V, 2019 WL 948371, at *2-3 (Fed. Cl. Spec. Mstr. Jan. 31, 2019); *Moran v. Sec'y of Health & Human Servs.*, No. 16-538V, 2019 WL 1556701, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019). A reasonable reduction for these issues is $1,157.40.

Accordingly, petitioners are awarded final attorneys' fees of $98,571.10.

---

[4] The OSM Fee Schedules are available at: http://www.cofc.uscourts.gov/node/2914.

### c. Attorneys' Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $46,574.59 in attorneys' costs. Fees App. Ex. 1 at 54. This amount includes the cost of petitioners' medical experts (Dr. Michael Katze, Dr. Harry Hull, and Dr. David Siegler), petitioners' life care planner, Ms. Roberta Hurley, and work performed by petitioners' guardianship attorney, as well as costs associated with travel to visit with petitioners, the acquisition of medical records, and postage. Petitioners have provided adequate documentation supporting the requested costs and they mostly appear reasonable in my experience. However, in his response, respondent questions the reasonableness of the costs associated with the expert work of Dr. Katze and Dr. Hull because "no reports from either expert were filed making it difficult to assess the reasonableness of the requested costs". Response at 1, n.1.

First, petitioners request $2,500.00 for the work of Dr. Katze, representing a retainer paid by counsel. However, Dr. Katze was fired from the University of Washington for sexually harassing his employees and misusing research funds before he was able to perform any substantive casework. Special Master Millman addressed this issue during a status conference held July 13, 2016, approximately one month after petitioners first paid a retainer to Dr. Katze. ECF No. 84; ECF No. 155-1, p. 55. At that time Special Master Millman cited a news report dated July 4, 2016. ECF No. 84. Although that report indicates that Dr. Katze's alleged misconduct pre-dated his retention in this case, it also confirms that he had not as of that date been removed from his position, and it is not clear what, if any, information regarding the allegations would have been publicly available at the time Dr. Katze was retained. Petitioners did not incur any expenses relative to Dr. Katze's retention after Special Master Millman's July 13, 2016 status conference discussing this issue. Moreover, Dr. Katze otherwise had the qualifications necessary to offer the type of opinion he was retained to provide. I also note that in my experience, a $2,500.00 expert retainer is not atypical. Accordingly, the expenditure itself was incurred reasonably. That this payment yielded no work for petitioners appears likely to have been unforeseeable and out of petitioners' control.

Concerning the work of Dr. Hull, his billing records indicate that he spent approximately 30 hours reviewing the medical records and researching medical literature in anticipation of preparing a report, for a total of $14,883.90 billed. Dr. Hull's opinion was pursued in response to the suggestion of an alternative theory of causation whereby the MMR vaccine caused an immunosuppression that allowed the child to become infected with Neisseria Meningitidis. ECF No. 76; ECF No. 155, p. 3. Ultimately, Dr. Hull advised petitioners that he could not so opine and therefore would not be able to produce a supportive expert report. ECF No. 155, p. 1. The fact that Dr. Hull was unable to provide a supporting opinion does not in itself render his billing non-compensable. However, given that he was ultimately unwilling to opine, his billing records do raise a concern regarding the amount of time he spent working on this case. *See* ECF No. 155-1, p. 64. Specifically, his invoice reflects that he first spent approximately ten hours conducting a general literature review before spending a further ten hours (approximately) reviewing T.A.'s medical records and other court documents. Once he began reviewing the medical records in this case, he billed a further five and a half hours on research. *Id*. The exact reason Dr. Hull declined to opine has not been disclosed, but upon my review of the billing records, I do not see how the

4

entirety of his hours billed could be reasonable. If Dr. Hull's extensive initial research confirmed that he could not support petitioner's claim as a matter of general causation, he should not have subsequently billed more than ten hours to review the complete medical records. Alternatively, if Dr. Hull was ultimately unable to opine due to concern regarding specific causation based on the facts of this case, it seems that his preliminary discussions with counsel coupled with his own expertise should have been sufficient to guide him toward reviewing the complete medical history of the case before conducting substantial preliminary research into the general medicine. Accordingly, I find that Dr. Hull's billing should be reduced by one-third, resulting in a reduction of $4,911.69.

## II. Conclusion

Based on all the above, I find that petitioner is entitled to the following award of reasonable attorneys' fees and costs:

| Attorneys' Fees Requested | $99,728.50 |
|---|---|
| (Reduction to Fees) | - ($1,157.40) |
| **Total Attorneys' Fees Awarded** | **$98,571.10** |
| | |
| Attorneys' Costs Requested | $46,574.59 |
| (Reduction of Costs) | -($4,911.69) |
| **Total Attorneys' Costs Awarded** | **$41,662.90** |
| | |
| **Total Attorneys' Fees and Costs** | **$140,234.00** |

In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e) (2012), I have reviewed the billing records and costs in this case and finds that petitioners' request for fees and costs, other than the reductions delineated above, is reasonable. **Accordingly, I award a lump sum in the amount of $140,234.00, representing reimbursement for petitioner's attorneys' fees and costs, in the form of a check payable to petitioners and their attorney, Mr. Andrew Downing.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court shall enter judgment in accordance herewith.[5]

**IT IS SO ORDERED.**

    s/Daniel T. Horner
    Daniel T. Horner
    Special Master

---

[5] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).